<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.P., individually and on behalf of her son, J.P.<br><br>          Plaintiff,<br><br><br>v.<br><br><br>EAST ORANGE BOARD OF EDUCATION,<br><br>          Defendant. | Civ. No. 06-5130 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

SPECIAL EDUCATION CLINIC
RUTGERS SCHOOL OF LAW-NEWARK
by: Esther Canty-Barnes, Esq.
123 Washington Street
Newark, New Jersey 07102

     *Attorneys for Plaintiff,*

SCHWARTZ SIMON EDELSTEIN & CELSO, LLP
by: Denis G. Murphy, Esq.
44 Whippany Road, Suite 2010
P.O. Box 2355
Morristown, New Jersey 17962

     *Attorneys for Defendants.*

<u>**DEBEVOISE, Senior District Judge**</u>

     This matter arises out of the appeal of a decision rendered by the Honorable Sandra Ann

Robinson, Administrative Law Judge ("ALJ"), dismissing a Petition for Due Process alleging

that the East Orange Board of Education ("the Board") violated several provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. and New Jersey state law.  In a Complaint filed on October 25, 2006, N.P., individually, and on behalf of her son, J.P., appealed the ALJ's decision pursuant to 20 U.S.C. § 1415(i)(2), alleging violations of the IDEA, 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and asking this Court, among other things, to order the Board to provide compensatory education and pay compensatory damages.

The Board now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  In doing so, it contends that (1) N.P.'s claim for compensatory education under the IDEA is moot; (2) N.P. failed to exhaust her administrative remedies with respect to her claim that J.P.'s Individualized Education Program ("IEP") of May 25, 2005 was inadequate; (3) N.P. may not seek compensatory education under the IDEA because she alleges procedural violations that do not rise to the level of substantive violations; (4) N.P. failed to state a claim under 42 U.S.C. § 1983; (5) N.P. failed to exhaust her administrative remedies with respect to her claims under 42 U.S.C. § 1983, the RA, and the ADA; and (6) N.P.'s claims under 42 U.S.C. § 1983, the RA, and the ADA lack legal and factual support.  For the reasons set forth below, the Board's motion is granted.

First, N.P.'s claim for compensatory education is not moot because N.P. and J.P. retain a concrete interest in seeking compensatory education, despite having moved to an adjacent school district.  Second, N.P. exhausted her administrative remedies with respect to her claim that J.P.'s May 25, 2005 IEP was inadequate, because that claim was explicitly adjudicated in the ALJ's decision on July 27, 2006.  Third, N.P. cannot seek compensatory education under the IDEA

because there is no evidence that the failure to develop an IEP for the 2004-2005 school year deprived J.P. of an educational benefit or that the failure to timely respond to N.P.'s requests for records and an IEP meeting deprived her of meaningful involvement in the creation of J.P.'s IEPs.  Fourth, N.P. failed to state a claim under 42 U.S.C. § 1983 because it cannot be used as a means to enforce the IDEA or RA.  Finally, N.P.'s claims under the ADA and RA must fail because they are derivative of her claim under the IDEA.

## I.  BACKGROUND

This is a sad case.  From May 18, 2004, when Plaintiff J.P. was suspended from the Gateway School, until October 20, 2005, when J.P. was placed in the Devereux Treatment Center, an impoverished mother, N.P., in constantly shifting circumstances, struggled to obtain from the overburdened Board of Education of a depressed community a free and appropriate public education ("FAPE") for her desperately handicapped son, J.P.[1]

J.P. is a nineteen-year-old boy who has been diagnosed with cerebral palsy, cognitive impairment, and Attention Deficit Hyperactivity Disorder (ADHD).  N.P., J.P.'s maternal second cousin, adopted J.P. shortly after his premature birth.  Since the age of five, the Board determined that J.P. was eligible for special education services under the classification of Traumatic Brain Injury (TBI), and placed him in a variety of schools, both in and out of the East Orange school district.

On April 19, 2004, the Board sent written notice to N.P. that it was scheduling an annual review conference for May 12, 2004 to review and revise J.P.'s then-current IEP.  At that meeting, which N.P. did not attend, the Board reviewed and developed a new IEP for J.P. that was later sent to N.P. for her review and input.  N.P. did not respond.  On May 18, 2004, J.P. was

---

[1] Appendix A to this opinion sets forth a chronological account of the significant events that took place during that period.

suspended from the Gateway School in Carteret, New Jersey for disruptive behavior.  On

October 10, 2004, the Board sent N.P. written notice granting her request to remove J.P. from the

Gateway school and place him on home instruction.[2]  This notice also indicated that N.P.

declined a proposed conference with the Board to discuss home instruction, and instead gave the

Board verbal consent.  In October 2004, the Board placed J.P. on home instruction pending an

out of district placement.  No IEP was in place for J.P. at that time.

On November 24, 2004, J.P. was admitted to Trinitas Hospital ("Trinitas") in Elizabeth,

New Jersey for observation and to stabilize his behavior.  He was released on January 6, 2005

and placed back on home instruction, only to be readmitted for similar behavioral problems.  His

attending physician recommended placement at a residential facility.

On February 24, 2005, N.P. sent a letter to the Board requesting records, including IEP

evaluations, suspension records, and correspondence.[3]  On March 15, 2005, she sent another

letter to the Board requesting these records and an urgent meeting to develop an IEP for J.P,

because he was about to be released from Trinitas.

On March 25, 2010, J.P. was discharged from Trinitas and resumed home instruction

with additional services.  On April 8, 2005, N.P. filed a Petition for Due Process pursuant to

N.J.A.C. Section 6A:14-2.7, seeking from the Board records and an IEP meeting to find an

appropriate placement for J.P.  On April 19, 2005, the Board provided records that were

responsive to N.P.'s requests of February 24, 2005 and March 15, 2005.  On April 21, 2005, a

due process hearing was scheduled before the ALJ, but not completed until May 23, 2006.  In the

---

[2] This implies that N.P. made this request before October 10, 2004.  However, the record
is unclear regarding exactly when she made it.

[3] N.P. asserts that she also requested an IEP meeting.  However, the letter reflects no such
request.

interim, the ALJ instructed the Board to conduct an IEP meeting on May 2, 2005.[4]  At that meeting, which was only attended by N.P. and J.P.'s case manager, N.P. agreed to place J.P. on home instruction for thirty days pending further placement.[5]  The parties also agreed to conduct additional evaluations.  On May 25, 2005, the Board conducted a second IEP meeting at which the parties devised an IEP.  N.P. signed the IEP, but added a hand-written note reserving her rights and indicating that the IEP should be modified and revised because it did not incorporate a behavioral intervention plan and related services.

On July 19, 2005, the Board modified J.P.'s IEP to include occupational and physical therapy services.  On July 25, 2005, the Board placed J.P. at the Children's Center of Monmouth County.  On August 4, 2005, J.P. was hospitalized at Newark Beth Israel Children's Crisis Unit in Newark, New Jersey.  On August 24, 2005, after attempts with the Board to coordinate an appropriate placement for J.P., N.P. requested the Division of Youth and Family Services to seek placement for J.P. at a residential facility.  The Partnership for Children of Essex County, serving as a liaison between the parties, found placement for J.P. at the Devereux Treatment Center ("Deveruex") in Florida.  On October 25, 2005, J.P. was admitted to Devereux.  On December 6, 2005, the Board held a telephone conference with the Devereux staff and N.P. to revise J.P's IEP.

On July 27, 2006, the ALJ dismissed N.P.'s Petition for Due Process and issued a written decision in favor of the Board.  The ALJ found that (1) N.P. failed to prove the lack of an appropriate IEP for J.P. from May 2004 to July 27, 2006 due to procedural violations, because the Board held IEP meetings on May 25, 2005 and December 6, 2005 where IEPs were

---

[4] The Board asserts that it had attempted to schedule an IEP meeting for that same date before N.P. filed the Petition for Due Process.  However, the Board failed to append to its motion papers the exhibit that it cites in support thereof.

[5] N.P. also reserved her rights to seek compensatory education.

developed for J.P. and signed by N.P.; and (2) N.P. failed to prove that the procedural defects in

developing J.P.'s IEP affected J.P.'s right to an FAPE, because the Board held a telephone

conference on December 6, 2005 between the Devereux Treatment Facility and N.P., indicating

that N.P. was fully involved creating J.P.'s IEP.[6]

In 2007, after the start of this litigation, N.P. and J.P. moved to the Newark School

District where they still reside.  J.P. is currently enrolled at the Horizon High School, a private

school in that district.

## II.  DISCUSSION

The Board now moves for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  This motion gives rise to the following four issues: (1) whether N.P.'s claim for

compensatory education is moot because she and J.P. no longer reside in the East Orange school

district; (2) whether N.P. failed to exhaust her administrative remedies with respect to her claims

disputing the appropriateness of J.P.'s IEPs; (3) whether the procedural violations of the IDEA

asserted by N.P. entitle her to seek compensatory education; (4) whether N.P. can assert a claim

under 42 U.S.C. § 1983 as a means to enforce violations of the IDEA and the RA; (5) whether

N.P. exhausted her administrative remedies with respect to her claims under the ADA and RA;

and (6) whether N.P. can assert claims under the ADA and RA on the same facts as those under

the IDEA.

## A.    Standard of Review

Summary judgment is proper where "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For an issue to

be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find

---

[6] The ALJ also found that (1) the case was not moot as a result of the school year having
ended; and (2) the Board rightfully assumed responsibility to pay for J.P.'s education at
Devereux.  These findings are not in dispute at this time.

for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

In IDEA cases, district courts adopt a modified standard of review on summary judgment.  Courts are required to give "due weight" to the factual findings in state administrative proceedings.  See Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).  In this Circuit, "due weight" constitutes a modified *de novo* review, whereby "a district court is required to make

findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." <u>S.H. v. State-Operated Sch. Dist.</u>, 336 F.3d 260, 270 (3d Cir. 2003).

**B.        Mootness of N.P.'s Claim for Compensatory Education**

The Board argues that N.P.'s claim for compensatory education is moot because, during the course of this litigation, N.P. and J.P. moved out of the East Orange school district and found placement in the Newark school district.  (Def.'s Br. Summ. J. 8-16.)  N.P. asserts that her claim is not moot because (1) in the event that the Court grants compensatory education, the Board "would be responsible for the provision and monitoring of J.P.'s educational services for a period of compensatory education."  (Pl.'s Br. Summ. J. 11); and (2) her claim is "capable of repetition, yet evading review" because "there is a possibility that [she and J.P.] could return to East Orange" (Pl.'s Br. Summ. J. 11-12).

A claim becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." <u>Donovan ex. Rel. Donovan v. Punxsutawney Area Sch. Bd.</u>, 336 F.3d 211, 216 (3d Cir. 2003) (citation omitted).  The heart of a mootness inquiry is whether the court "can grant effective relief." <u>Id.</u>  That is, "if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." <u>Id.</u>

Compensatory education is a common form of relief under the IDEA that is intended to make whole a child who has been deprived of an FAPE. <u>Ferren v. Sch. Dist. of Phila.</u>, 612 F.3d 712, 717-18 (3d Cir. 2010) ("compensatory education serves to replace educational services the child should have received in the first place and [] such awards should aim to place disabled

children in the same position they would have occupied but for the school district's violations of IDEA" (internal citations omitted)); Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 249, (3d Cir. 1999).

Case law in this Circuit addressing the effect of moving out of a school district during the course of litigation for compensatory education is spotty.  The Board cites to S.N. v. Old Bridge Twp. Bd. of Educ., No. 04-517, 2006 WL 3333138 (D.N.J. Nov. 15, 2006) to support its argument that the Court cannot provide a child with compensatory education when he or she has moved out of the district.  2006 WL 3333138, at *4.  In that case, this Court found that granting compensatory education would have been impossible because the plaintiff had moved out of state to the Columbia, Missouri school district and found placement there.  Id. at *2.

Although N.P. fails to cite to any relevant case law in this Circuit holding otherwise, the Court is persuaded by Neshaminy Sch. Dist. v. Karla B., No. 96-3865, 1997 WL 137197 (E.D.Pa. Mar. 20, 1997).  In that case, the defendant brought a claim for compensatory education and subsequently moved from the Neshaminy school district to the Pennsbury school district. 1997 WL 137197, at *4.  The court held that the plaintiff's claim for compensatory education had not been rendered moot by virtue of moving to a different school district, because the plaintiff retained "a concrete interest in seeking to redress an injury which [it] suffered in the past."  Id. at *6.  In doing so, the court noted that compensatory education is not prospective relief; rather it "imposes liability upon the school district to merely pay for services that they were required to pay for all along, but for whatever reason, the district improperly refused to do so."  Id. at *5 (citing Miener v. Missouri, 800 F.2d 749, 753 (8th Cir. 1986)).  The court further noted that "if the rule was to the contrary, then a school district could simply stop providing required services to a student with the underlying motive of inducing this student to move from

the district, thus removing any future obligation under IDEA which the district may owe to the student." Id. at *6.

Here, N.P. and J.P. retain a concrete interest in receiving compensatory education from the Board.  Further, the Court's ability to grant compensatory education does not depend on their remaining in the East Orange school district.  This case is distinguishable from S.N., because N.P. and J.P. moved to an adjacent school district, rather than out of the state entirely.  2006 WL 3333138, at *2.  Therefore, N.P.'s claim for compensatory education is not moot and the court will reach its merits.[7]

## C.   Exhaustion of IDEA Claims Regarding the Appropriateness of J.P.'s IEPs

The Board argues that N.P. failed to exhaust her administrative remedies with respect to her claim that "J.P.'s behavioral problems were inadequately addressed in the IEPs presented" because that claim includes the IEP developed on May 25, 2005, which was not referenced in her due process complaint.[8]  (Def.'s Br. Summ. J. 20.)  N.P. asserts that she exhausted her administrative remedies because the ALJ dismissed all her claims on the merits and determined that no further administrative proceedings were required.  (Pl.'s Br. Summ. J. 15.)

---

[7] N.P.'s argument that her claim is capable of repetition, yet evading review, is unavailing.  The notion that N.P. and J.P. could return to the East Orange School District is speculative and does not amount to a "reasonable likelihood" that they will suffer the same injuries again.  See Honig v. Doe, 484 U.S. 305, 318 (1988); Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).  Further, N.P. incorrectly cites Honig for the principle that a child that no longer resides in a particular school district nonetheless has justiciable claims against that school district, so long as the child remains eligible for educational services under federal law and the school district maintains policies contrary to federal law.  (Def.'s Br. Summ. J. 12.)  In Honig, although the plaintiff moved out of the school district he was suing (and remained in the state), his claims were capable of repetition, yet evading review, because he showed that *all* school districts in the state maintained the same policies contrary to federal law that would cause injury to him.  484 U.S. at 320.  Here, N.P. makes no such showing.

[8] The due process complaint was filed roughly six weeks before the May 25, 2005 IEP meeting took place.

Under the IDEA's statutory scheme, once a decision is rendered at a due process hearing, administrative remedies are deemed exhausted and a party has the right to appeal the decision by bringing a civil action in any state or federal court.  20 U.S.C. § 1415(i)(1)(A)-(2)(A); See also W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995) abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007).   Here, The ALJ's written decision specifically notes that the Board developed an IEP for J.P. on May 25, 2005, with which N.P. was dissatisfied because it did not include a behavioral intervention plan and related services, (ALJ Op. at 6, 26), and concludes that N.P. "failed to prove that an appropriate IEP was not developed for JP from May 2004 to the present" (ALJ Op. at 26).  Therefore, the ALJ's decision took into account the May 25, 2005 IEP, and, in turn, N.P.'s claim that the May 25, 2005 IEP was inappropriate.  As a result, this claim was exhausted at the administrative level.  However, the Court will not address the merits of this claim because the parties fail to dispute the appropriateness of the May 25, 2005 IEP in the context of a substantive violation of the IDEA.[9]

## D.    N.P.'s Claim for Compensatory Education

The Board argues that N.P.'s claim for compensatory education should be dismissed because she cannot show that the Board's procedural violations deprived J.P. of an FAPE.[10]  N.P.

---

[9] N.P. alleges that "Defendant District failed to develop an IEP that was reasonably calculated to provide J.P. with an FAPE." (Pl.'s Br. Summ. J. 20.)  However, she does so in the context of her argument that the failure to timely develop an IEP is a procedural violation that entitles here to seek compensatory education (Pl.'s Br. Summ. J. 18).  Under Rowley, a claim disputing the appropriateness of an IEP tends toward a distinct substantive violation that cannot serve to support the gravity of a procedural violation.  458 U.S. at 207; see also D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 565 (3d Cir. 2010).

[10] The Board also argues incorrectly that N.P. is not entitled to claim compensatory education because she failed to provide expert testimony that J.P. had been denied an FAPE. (Def.'s Br. Summ. J. 27-32.)  To support this argument, the Board misconstrues this Court's holding in P.D. v. Frankling Twp. Bd. of Educ., No. 05-2363, 2006 WL 753152 (D.N.J. March 23, 2005).   In that case, this Court held that, in attempting to prove the inappropriateness of an IEP, the testimony of a student's mother was insufficient to rebut a school board's unanimous

sets forth two arguments in response.  First, she contends the Board's failure to timely develop an IEP for J.P. denied him the right to an FAPE.[11]  Second, she asserts that J.P. was denied an FAPE because the Board failed to timely respond to her written requests for records and an IEP meeting.

The IDEA requires states that receive federal funding to provide an FAPE to all disabled students until the age of twenty-one.  20 U.S.C. § 1412(a)(1)(A); Ferren C., 612 F.3d at 717. The right to an FAPE is rooted in the IEP, "the package of special educational services designed to meet the unique needs of the disabled child."  Id. (internal citations and quotations omitted).

The statute requires educational agencies to follow specific procedures when creating an IEP.  For example, an IEP must be prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, a special education teacher, the child's parent or guardian, and, where appropriate, the child.  20 U.S.C. § 1414(d)(1)(B).  Further, the local educational agency must have an IEP in place for each qualifying child within its jurisdiction at the beginning of each school year.  Id. § 1414(d)(2)(A).  Additionally, the local educational agency must provide the parent or guardian with written notice of any evaluation procedures that

---

expert testimony.  P.D., 2006 WL 753152, at *7-8.  However, this holding has no bearing on the procedural violations that are the subject of the current motion.

Moreover, as discussed below, procedural violations themselves can (but need not) cause a denial of an FAPE, and thereby entitle a plaintiff to compensatory education.  C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 67 (3d Cir. 2010).  The Board presents no authority indicating that a party seeking compensatory education for procedural violations of the IDEA need put forth expert testimony to show that such violations resulted in the denial of an FAPE.

[11]Citing to Rowley, N.P. also argues that, under the 1997 revisions of the IDEA, in contrast to the 2004 revisions, procedural violations of the IDEA automatically amount to a substantive violation.  458 U.S. at 204; (Def.'s Br. Summ. J. 15.)  This is a particularly odd argument considering Rowley was decided in 1982.  Rowley indeed emphasizes the importance of the IDEA's procedural safeguards; however, it does not stand for the principle invoked by N.P.  Id. at 204-05.

it wishes to conduct, Id. § 1414(b)(1), or when it proposes or refuses to initiate a change in the "identification, evaluation, or educational placement of the child." Id. § 1415(b)(3). In New Jersey, a school district must provide such notice within twenty calendar days. See N.J. Admin. Code § 6A:14-2.3(h)(5).

In assessing violations of the IDEA, the Court of Appeals conducts the following two-pronged inquiry originally set forth in Rowley: (1) whether the school district complied with the procedures set forth in the IDEA; and (2) whether the school district fulfilled its obligation to provide the student with an FAPE. C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 67 (3d Cir. 2010) (citing Rowley, 458 U.S. at 206-07). Failure to satisfy either prong constitutes an IDEA violation. Id. However, the appropriate relief depends on which prong has not been satisfied. Id. Failure to comply with the IDEA's procedural requirements by itself entitles a plaintiff only to injunctive relief for future compliance. Id. On the other hand, failure to provide an FAPE entitles a plaintiff to compensatory education or tuition reimbursement. Id.

The elements of the Rowley inquiry are not mutually exclusive. Indeed, a procedural violation may rise to the level of denying a plaintiff an FAPE, thereby entitling that plaintiff to compensatory relief. Id. (citing Kable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 775, 765 (6th Cir. 2001)). However, a procedural violation does not, per se, constitute a failure to provide an FAPE. Id. Rather, a violation of the IDEA's procedural requirements denies a plaintiff an FAPE when it causes substantive harm to the child or parents. Id. This occurs when "the procedural inadequacies (1)[i]mpeded the child's right to an FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of an FAPE to the parent's child; or (3) caused a deprivation of an educational benefit." Id. (citing 34 C.F.R. § 300.513(a)(2)).

Here, it is clear that the Board committed procedural violations of the IDEA by failing (1) to fashion an IEP for J.P. by the beginning of the 2004-2005 school year and (2) timely respond to N.P.'s requests for records and an IEP meeting.  However, these procedural violations did deny J.P. an FAPE because there is no evidence that J.P. was deprived of an educational benefit, or that N.P. was deprived of meaningful involvement in the creation of J.P.'s IEPs.

**i.       Failure to Develop an IEP before the Start of the 2004-2005 School Year**

N.P. cites to <u>Knable v. Bexley City Sch. Dist.</u>, 238 F.3d 755 (6th Cir. 2001) to support her argument that the failure to develop an IEP for J.P. by the beginning of the 2004-2005 school year deprived him of an educational benefit.  In that case, the Court of Appeals for the Sixth Circuit held that the failure to formulate a final IEP before the beginning of the school year resulted in the denial of an FAPE.  <u>Knable</u>, 238 F.3d at 766-67.  Central to this holding was that the school district never convened an IEP meeting before or after the start of the school year, and that the child was enrolled for the entire school year without receiving an IEP.  <u>Id.</u>

Here, the record clearly indicates that J.P. was without an IEP for approximately one year, between May 18, 2004 and May 25, 2005.  However, unlike <u>Knable</u>, J.P. was not enrolled in school for most of the 2004-2005 year.  Instead, at N.P.'s request, J.P. was placed on home instruction from October 2004 until June 8, 2005.  In addition, J.P. spent approximately four months of that time in the hospital to stabilize his behavior.  While these circumstances are certainly lamentable, they do not amount to the loss of an educational benefit.  Therefore, the absence of an IEP during the 2004-2005 school year did not deprive J.P. of an FAPE.[12]

**ii.      N.P.'s Involvement in Creating J.P.'s IEP**

---

[12] Furthermore, as a practical matter, under such fluctuating circumstances, it is unclear how the Board would have been able to properly develop an IEP for J.P.

N.P.'s argument that the Board denied J.P. an FAPE by depriving her of meaningful involvement in the creation of J.P.'s IEP is unavailing.  In arguing to the contrary, the Board correctly cites to <u>D.S. v. Bayonne Bd. Of Educ.</u>, 602 F.3d 553 (3d Cir. 2010).  In that case, the plaintiff argued that the school board's failure to timely respond to requests for a meeting to discuss creating D.S.'s ninth-grade IEP that incorporated the recommendations of certain private evaluators deprived him of an FAPE.  <u>D.S.</u>, 602 F.3d at 565.  The Court of Appeals found that these procedural violations did not deny D.S. an FAPE because his parents ultimately had the opportunity to participate meaningfully in creating an IEP that was in effect for most of his ninth-grade year, even though they did not sign off on the IEP.  <u>Id.</u> at 565-66.

Here, the Board untimely responded to N.P.'s requests of February 24, 2010 and March 15, 2010 for records and an IEP meeting in violation the N.J.A.C.'s twenty day notice requirement.  However, N.P. ultimately had the opportunity to participate meaningfully in the creation of J.P.'s IEPs of May 25, 2005 and December 6, 2005, having attended and made suggestions at those IEP meetings.  <u>See</u> <u>D.S.</u>, 602 F.3d at 565-66; <u>Fuhrmann v. East Hanover Bd. of Educ.</u>, 993 F.2d 1031, 1036 (3d Cir. 1993).  Therefore, the Board's failure to timely respond to N.P.'s requests did not deprive J.P. of an FAPE.

**E.     N.P.'s Section 1983 Claims**

The Board correctly asserts that N.P. cannot bring a claim under 42 U.S.C. § 1983 as a means to enforce IDEA violations.  (Def.'s Reply Br. Summ. J. 13.)  Since 2007, the law in this Circuit has been that plaintiffs cannot seek relief under Section 1983 for violations of the IDEA or RA, because those acts themselves provide comprehensive remedial schemes.  <u>A.W. v. Jersey City Public Schools</u>, 486 F.3d 791, 803-04 (3d Cir. 2007).  Here, Counts Two and Four of the

Complaint seek to enforce violations of N.P.'s rights under the IDEA and RA, respectively, through 42 U.S.C. Section 1983.  (Compl. ¶ 70, 82.)  As such, those counts must be dismissed.

## F.    Exhaustion of Claims under the ADA and RA

The Board argues that N.P.'s claims under the ADA and RA should be dismissed because N.P. failed to exhaust these claims at the administrative level.[13]  (Def.'s Br. Summ. J. 34-35.) N.P. counters that that she need not exhaust these claims at the administrative level because she seeks relief that is not available under the IDEA, namely compensatory damages.

The Court of Appeals has long recognized the following four exceptions to the IDEA's exhaustion requirement: "(1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant the relief sought; and (4) when exhaustion would cause severe or irreparable harm to a party."  D.A. v. Pleasantville Sch. Dist., No. 07-4341, 2009 WL 972605, at *5 (D.N.J. Apr. 6, 2009) (citing Komninos by Komninos Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)).

Currently, this Circuit does not recognize compensatory damages as a form of relief under the IDEA.  Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 186 (3d Cir. 2009).  In contrast, compensatory damages are available for violations of the ADA and RA.  See A.W., 486 F.3d at 804.

Here, N.P. seeks compensatory damages for violations of the ADA and RA.[14]  Because she is unable to seek compensatory damages for violations of the IDEA, her claims under the

---

[13] The Board makes this same argument with respect to N.P.'s claims under 42 U.S.C. § 1983.  However, this argument is moot because, as discussed previously, N.P.'s claims under Section 1983 are dismissed on the grounds that they cannot be used as a means to enforce claims under the IDEA and RA.

[14] The Complaint does not seek compensatory damages specifically for violations of the RA and ADA.  In fact, it fails to specify the relief sought under any particular count.  Instead, the Complaint indicates the relief sought, including compensatory damages, under the "Demand"

ADA and RA fall under the third exception to the exhaustion requirement.  Therefore, N.P. need

not have exhausted her administrative remedies with respect to those claims.

**G.    N.P.'s Claims under the ADA and RA**

The Board also argues that N.P.'s claims under the ADA and RA should be dismissed

because N.P. cannot to provide any legal or factual support to show that the Board violated the

IDEA.[15]  (Def.'s Br. Summ. J. 35-36.)   N.P. counters that the Board has not met its burden under

the summary judgment standard to show an absence of legal or factual support with respect to its

claims under the the ADA and RA.[16]  (Pl.'s Br. Summ. J. 30.)

Both the RA and ADA prohibit discrimination against individuals with disabilities by

entities that receive public funds.  See 29 U.S.C. § 794(a) (RA); 42 U.S.C. §§ 12161, 12132

(ADA).  Notably, plaintiffs may point to conduct giving rise to a violation of the IDEA in order

to show violations of the RA and ADA.  Andrew M., 490 F.3d at 349; see also Derrick F. v. Red

Lion Area Sch. Dist., 586 F. Supp. 2d 282, 298-99 (M.D.Pa. 2008).  However, an IDEA

violation is not a *per se* violation of the RA and ADA.  Andrew M., 490 F.3d at 349; see also

Derrick F., 586 F. Supp. 2d at 298-299.  Indeed, the RA and ADA "focus on disability-based

discrimination against special needs students and are intended to reach grosser kinds of

---

section.  Nonetheless, making all reasonable inferences in favor the non-moving party, the Court
will construe N.P.'s claims under the RA and ADA to seek compensatory damages.  See Pa.
Coal Ass'n, 63 F.3d at 236.

[15] The Board also makes this argument with respect to N.P.'s claim under 42 U.S.C. §
1983.  This claim is dismissed on different grounds  See Note 13, *supra*.

[16] N.P. also argues that "whether N.P. and J.P. can factually and legally support claims
under Section 1983, the ADA, and Rehabilitation Act are genuine issues of material fact"
because there are several interrogatories that the Board has yet to answer.  (Pl.'s Br. Summ. J.
31.)  This argument is unavailing because N.P. failed to explain specifically how the answers to
these interrogatories would support her claims under the RA and ADA.  See Fed. R. Civ. P.
56(d).

misconduct than the IDEA." Hornstine v. Twp. of Moorestown, 263 F. Supp. 2d 887, 901 (D.N.J. 2003) (internal quotations and citations omitted). Thus, plaintiffs must make a showing on the independent requirements of each act. Andrew M., 490 F.3d at 349; see also Derrick F., 586 F. Supp. 2d at 298-299.

      To prevail in a discrimination claim under the RA, a plaintiff must show that (1) he is disabled as defined by the Act; (2) he is otherwise qualified to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. Andrew M., 490 F.3d at 350. A plaintiff cannot merely show that he or she is disabled and was denied some service. Id. Rather, he must show that the state failed to provide the service for the sole reason that the child is disabled. Id.

      Similarly, to establish a prima facie case under the ADA, a plaintiff must show that (1) he is disabled; (2) he is a qualified individual with a disability; and (3) he has suffered an adverse action because of that disability. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citations omitted).

      Despite the independent requirements of the IDEA, RA, and ADA, the Court of Appeals has held explicitly that the failure to provide a child with an FAPE under the IDEA is a violation of both the IDEA and the RA. Andrew M., 490 F.3d at 350; L.T. v. Mansfield Twp. Sch. Dist., No. 04-1381, 2007 WL 2332308, at *5 (D.N.J. Aug. 10, 2007). Further, more than one court in this Circuit has held that, when ADA and RA claims are based on violations of the IDEA, the ADA and RA claims are derivative of the IDEA claims. Taylor v. Altoona Area Sch. Dist., 2010 WL 3471258, at *10 (W.D.Pa. Sept. 3, 2010); J.M. v. East Greenwhich Twp. Brd. of Educ., No. 07-2861, 2008 WL 819968, at *5 (D.N.J. Mar. 25, 2008); Emily Z. v. Mt. Lebanon Sch. Dist.,

2007 WL 3174027, at *4 (W.D.Pa. Oct. 29, 2007) (citing <u>Melissa S. v. School Dist. of Pittsburgh</u>, 183 Fed. Appx. 184, 188 (3d Cir. 2006)).

      Here, although the Court is troubled by the Board's failure to cite to any of the aforementioned authority, as the moving party that does not bear the burden of proof at trial, the Board nonetheless met its burden under the summary judgment standard by asserting an absence of evidence to support N.P.'s claims under the IDEA as a means to assert an absence of evidence in support of N.P.'s claims under the ADA and RA.  And because N.P. cannot prevail on her claims under the IDEA, she cannot prevail on her claims under the ADA and RA.   Therefore, those claims are dismissed.

## III.  CONCLUSION

      For the foregoing reasons, the Board's motion for summary judgment is GRANTED. Plaintiff's Complaint is dismissed in its entirety with prejudice.

      The Court will enter an order implementing this opinion.


**/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: February 03, 2011

Appendix A

**N.P. and J.P. v. East Orange Board of Education**

<u>Chronology</u>

April 19, 2004 - District notice of annual review conference.

May 12, 2004 - Meeting to review and revise IEP. N.P. did not attend.

May 18, 2004 - J.P. suspended from Gateway School.

October 2004 - District commenced home instruction.

Nov. 24, 2004 - J.P. admitted to Trinitas Hospital for observation.

Jan. 6, 2005 - J.P. released from Trinitas Hospital.

Jan. 14, 2005 - J.P. readmitted to Trinitas Hospital and doctors recommended permanent placement.

Feb. 24, 2005 - District was notified in writing of N.P.'s request for IEP, evaluation and records.

Mar. 15, 2005 - N.P. letter to District advising of J.P.'s release from hospital and requesting meeting and placement.

Mar. 25, 2005 - J.P. released from Trinitas; No IEP in place.

April 8, 2005 - N.P. filed due process complaint - failure to provide record, failure to provide FAPE, failure to develop appropriate IEP.

Apr. 21, 2005 - due process hearing scheduled before ALJ.

May 2, 2005 - Date ALJ ordered IEP meeting - only J.P.'s case manager attended; N.P. agrees to 30 day home instruction.

May 25, 2005 - IEP meeting.  District agreed to additional evaluation and to develop IEP; no behavioral intervention plan.

June 8, 2005 - Home instruction terminated.

July 18, 2005 - N.P. and J.P. visited Children's Center of Monmouth Co.

July 25, 2005 - District placed J.P. at Children's Center

Aug. 3, 2005 - J.P.'s placement at Children's Center terminated.

August 4, 2005 - J.P. hospitalized at Beth Israel Children's Unit. N.P. requested home or hospital instruction and IEP.

Aug. 24, 2005 - N.P. agreed to have Div. of Youth & Family Service seek residential placement.

Oct. 4, 2005 - N.P. appealed ALJ decision.

Oct. 20, 2005 - J.P. placed in Devereux Treatment Center.

July 27, 2006 - ALJ Robinson's decision.

Oct. 25, 2006 - N.P. and J.P. filed District Court complaint.

　　2007 - N.P. and J.P. moved to Newark.

　　2007 - J.P.'s student records sent to Newark Board.